IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIPARETH F.,[1] | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-2577-MAB |
| | ) |
| COMMISIONER OF SOCIAL SECURITY, | ) |
| | ) |
|        **Defendant.** | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Tipareth F. is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons set forth below, the Commissioner's decision is affirmed.

### PROCEDURAL HISTORY

Plaintiff Tipareth F. filed a *pro se* application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act in November 2016 (*see* Tr. 112). She alleged that she was disabled as of September 24, 1992 — her eighteenth birthday — due to various mental health diagnoses and alcoholism (Tr. 112). Plaintiff's application was denied at

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. P. 5.2(c) and the Advisory Committee Notes thereto.

the initial level in July 2017 (Tr. 121). Plaintiff then filed a *pro se* application for Supplemental Security Income (SSI) under Title XVI of the Act in October 2017, once again alleging disability since September 24, 1992 (*see* Tr. 137–38). Her SSI claim bypassed the initial determination and was escalated to be decided alongside her DIB claim at the reconsideration level (Tr. 17).

Both claims were denied at the reconsideration level in March 2018 (Tr. 135, 150). Plaintiff requested a hearing before an administrative law judge ("ALJ"). After multiple continuances (*see* Tr. 89, 92–97, 100–03, 106–11), a hearing was held on June 10, 2021 (Tr. 75–86). Plaintiff remained unrepresented at the time. A week later, ALJ Ryan Alger issued an unfavorable decision (Tr. 157–166). Plaintiff sought review at the Appeals Council, and, on July 18, 2022, the Appeals Council remanded the matter for further development of the record (Tr. 174–75).

Following remand, ALJ Stuart Janney held a hearing on January 31, 2023, by which time Plaintiff was represented by counsel (Tr. 41–72; *see also* Tr. 399). Following the hearing, Plaintiff amended her alleged onset date of disability to January 2, 2017, (Tr. 510), which had the effect of dismissing her DIB claim because the amended onset date postdated her date last insured (which was September 30, 2013) (Tr. 16–17). On March 28, 2023, ALJ Janney issued an unfavorable decision, finding Plaintiff not disabled and denying her SSI claim (Tr. 16-30). There is no dispute that Plaintiff exhausted her administrative remedies, and that the ALJ's decision became the final agency decision (*see* Doc. 29, p. 4). This action was timely filed on July 25, 2023, seeking judicial review of ALJ Janney's adverse decision.

Plaintiff argues that the ALJ's decision should be reversed because his RFC determination is not supported by substantial evidence or sufficient explanation and he failed to comply with the remand order issued by the Appeals Council (Doc. 22).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record contains only the facts necessary to provide a brief overview and to decide the issues raised by Plaintiff.

Plaintiff was born in September 1974 and was 42 years old on the amended alleged disability onset date (Tr. 30). The records reflect that Plaintiff's mental health issues began in adolescence and she required a number of psychiatric hospitalizations in her life (*e.g.,* Tr. 810–11, 829). The records also reflect that Plaintiff has a long history of alcohol abuse. She reported that she started drinking as a young teenager (Tr. 756 (age 13); Tr. 776 (age 14)). She has been taken to the emergency room for severe intoxication on a number of occasions, hospitalized for detox treatment various times, and attended several rehabilitation programs (*e.g.,* Tr. 690–91, 732–42, 753–56, 766–73, 776–88, 829).

A January 2017 statement from Nancy S. Remington, APRN, PCNS—who had a long-term treating relationship with Plaintiff—indicates that Plaintiff had been diagnosed with Bipolar II disorder, panic disorder with agoraphobia, social phobia, and alcohol dependence (Tr. 801). Ms. Remington further stated that during the course of their 10-plus year relationship, Plaintiff's primary issue was severe depression, with episodic manic phases that then end with a severe depression (*Id.*). Ms. Remington also noted that

Plaintiff's anxiety is severe, with episodic agoraphobia, intense social phobia, and panic attacks (*Id.*).

On June 23, 2017, during the agency's initial review of Plaintiff's DIB claim, a state agency non-examining psychologist, Dr. Adrian Brown, reviewed Plaintiff's file and concluded that there was insufficient evidence of Plaintiff's psychiatric conditions to find her disabled (Tr. 112–20).

On March 29, 2018, at the reconsideration stage, a state agency non-examining psychologist, Dr. Katrin Carlson, reviewed Plaintiff's medical records and completed two forms—a Psychiatric Review Technique Form ("PRT") and a Mental Residual Functional Capacity Assessment ("MRFC") (Tr. 127–33; 143–48). On the PRT, Dr. Carlson opined that when Plaintiff is actively using alcohol, her depression and anxiety are significantly exacerbated, and she is moderately limited in her ability to understand, remember, or apply information and markedly limited in her abilities to (1) interact with others; (2) concentrate, persist, and maintain pace, and (3) adapt and manage herself (Tr. 130). Based on these marked limitations, Plaintiff meets the listing for 12.04 for Depressive, bipolar, and other related disorders when she is using alcohol (Tr. 130).

But when Plaintiff is not drinking, Dr. Carlson stated that "there is evidence" that her depression and anxiety "significantly improve and are not at listing level at those times" (Tr. 130). Dr. Carlson opined that when Plaintiff is sober, she is only mildly limited in her ability to understand, remember, or apply information and her ability to adapt or manage herself (Tr. 130–31). And she is moderately limited in her ability to interact with others and her ability to concentrate, persist, and maintain pace (Tr. 130–31).

On the MRFC, Dr. Carlson expanded on Plaintiff's limitations when she is not drinking (Tr. 133). With respect to her sustained concentration and persistence, Dr. Carlson opined that Plaintiff was moderately limited in her ability (1) to carry out detailed instructions, (2) to maintain attention and concentration for extended periods, and (3) to complete a normal workday and workweek without interruptions from, or needing unreasonable breaks due to, her psychological symptoms, but she was not significantly limited in any other aspect (Tr. 132–33). Dr. Carlson explained that Plaintiff's concentration, persistence, and pace were "diminished for complex tasks but adequate for carrying out very simple tasks over the duration of a normal workday" (Tr. 133).

As for Plaintiff's social interaction limitations, Dr. Carlson opined that Plaintiff was moderately limited in her ability (1) to interact appropriately with the general public and (2) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, but she was not significantly limited in any other aspect (Tr. 133). In a narrative explanation, Dr. Carlson wrote:

> [Claimant] has [diagnosis] of social anxiety disorder and is thus not well-suited for working directly with the public or as part of a collaborative team setting. She had the ability to occasionally interact 1:1 with coworkers. Able to respond to supervision, ask questions, [and] maintain neat appearance.

(Tr. 133).

Medical records from various providers in Illinois from late 2019 through December 2022 show that Plaintiff presented with mostly acute physical complaints as opposed to mental health issues (*see* Tr. 844–987). In fact, the records show she rarely reported any mental health symptoms or concerns (*see id.*). She also reported she was only

drinking occasionally or not at all (*see id.*). The mental status exams performed by the providers were normal (*see id.*). And Plaintiff said her conditions were well managed on medications (Tr. 934, 981).

## **THE ALJ'S DECISION**

To qualify for SSI, a claimant must prove that they became disabled within the meaning of the applicable statutes and regulations. 42 U.S.C. §§ 1382 and 1382c(a)(3)(A); 20 C.F.R. § 416.202.[2] Under the Social Security Act, a person is disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905.

Here, ALJ Janney followed the familiar five-step sequential analysis to reach the conclusion that Plaintiff was not disabled (Tr. 16–30). *See* 20 C.F.R. § 416.920; *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (describing the five steps). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of January 2, 2017 (Tr. 19).

At step two, the ALJ found that Plaintiff's severe impairments included major depressive disorder, bipolar disorder, anxiety, panic disorder with agoraphobia, social phobia, and alcohol use disorder (Tr. 20). At step three, the ALJ determined that, when Plaintiff stopped using alcohol, none of her impairments, either alone or in combination,

---

[2] The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.*, and 20 C.F.R. pt. 416.

met or medically equaled a listed impairment (Tr. 22).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC") and found that, despite her limitations and psychiatric impairments, when Plaintiff was not drinking, she retained the ability to perform a full range of work at all exertional levels with the following non-exertional limitations: "She can understand, carry out, and remember simple instructions. She can tolerate occasional interactions with supervisors and co-workers, and she can respond appropriately during the interactions. She should never interact with the public." (Tr. 24).

At step four, the ALJ concluded that based on her RFC, Plaintiff could no longer perform any of her past relevant work (Tr. 29). At step five, the ALJ determined that, based on the testimony of the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including dishwasher, laundry worker, and industrial cleaner (Tr. 29–30). Accordingly, the ALJ found that Plaintiff was not disabled (Tr. 30).

## DISCUSSION

The scope of judicial review is limited to determining whether the ALJ applied the correct legal standard in reaching their decision, whether the ALJ's decision is supported by substantial evidence, and whether the ALJ "buil[t] an accurate and logical bridge from the evidence to [their] conclusion" that the claimant is not disabled. *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (internal citations omitted). In other words, "the ALJ must explain [their] decision in such a way that allows [the court] to determine whether [they] reached [their] decision in a rational manner, logically based on [their] specific findings and the

evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011). The court reviews the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). The ALJ's decision will be reversed "only if the record compels a contrary result." *Deborah M.*, 994 F.3d at 788 (internal quotation marks and citation omitted).

**A. RFC Formulation**

Plaintiff first argues the ALJ failed to support his RFC assessment with substantial evidence (Doc. 22, pp. 8–11). In particular, Plaintiff argues that while the ALJ said he gave "great weight" to the opinion of state agency reviewing psychologist Dr. Carlson, in reality the ALJ "effectively rejected" that opinion due to various issues, including that it was too vague (*Id.* at pp. 8–11). According to Plaintiff, the ALJ then went on to speculate as to the meaning of Dr. Carlson's opinion, thereby using his own lay opinion as the basis for the RFC determination, without citing to any other supporting evidence (*Id.*).

A claimant's RFC is "the maximum that a claimant can still do despite [their] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine the claimant's RFC based on "all the relevant evidence in [the] case record," which includes objective medical evidence, statements from medical sources, the claimant's own statements about symptoms and limitations, and observations from non-medical sources, like family, friends, neighbors, etc. 20 C.F.R. § 404.1545(a)(1), (3); *see also Craft*, 539 F.3d at 676; Social Security Ruling 96-5P, 1996 WL 374183, at *5 (July 2, 1996). The ALJ must explain how the

RFC accounts for and accommodates the claimant's limitations and how the evidence in the record supports the RFC. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("[T]he ALJ must account for the totality of a claimant's limitations in determining the proper RFC.") (internal quotation marks and citation omitted); *Ghiselli v. Colvin*, 837 F.3d 771, 779 (7th Cir. 2016) (ALJ must "build a logical bridge from the medical evidence to its conclusions regarding . . . [any] limitation attendant to its residual functional capacity determinations."); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (ALJ must "explain how she reached her conclusions about [claimant's] physical [and/or mental] capabilities.") (citing *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 352 (7th Cir. 2005)); Social Security Ruling 96-8p ("SSR 96-8p"), 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion . . . .").[3]

Here, the ALJ did not reject Dr. Carlson's opinions, like Plaintiff claims. Rather, the ALJ expressly stated that he gave "great weight" to the "intent" of Dr. Carlson's opinion—meaning the essence or the gist—that Plaintiff "could carry out simple instructions with no restrictions on persistence or pace, that public interaction should be restricted, and that there should be reduced interaction with others in a work setting" (Tr. 27, 28). The ALJ just did not adopt Dr. Carlson's exact wording because she did not

---

[3] *See also Winsted v. Berryhill*, 923 F.3d 472, 473 (7th Cir. 2019) (remanding because "ALJ did not adequately explain how the limitations he placed on Winsted's residual functional capacity accounted for the claimant's mental difficulties."); *Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008) (holding ALJ erred when he merely recited information from medical records but did not explain how that information supported his decision to account for claimant's mental impairments by limiting him to unskilled work); *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (holding ALJ erred by "not sufficiently connect[ing] the dots between Young's impairments, supported by substantial evidence in the record, and the RFC finding.").

"employ the regulatory and policy-based language used to describe the mental demands of work" (Tr. 28). In other words, the language Dr. Carlson used to describe Plaintiff's capabilities did not match the terminology used in the relevant federal regulations and Social Security Rulings. The ALJ restated the limitations identified by Dr. Carlson using more standard social security terminology.

A direct comparison illustrates that the limitations imposed by the ALJ accurately reflect and account for the limitations articulated by Dr. Carlson in her narrative opinion. First, Dr. Carlson wrote in her narrative explanation that Plaintiff's concentration, persistence, and pace were "diminished for complex tasks but adequate for carrying out very simple tasks over the duration of a normal workday" (Tr. 133). The ALJ understood the essence of Dr. Carlson's opinion to be that Plaintiff "could carry out simple instructions with no restrictions on persistence or pace" (Tr. 28). And the ALJ imposed this limitation in the RFC when he said that Plaintiff was able to "understand, carry out, and remember simple instructions" (Tr. 24). The ALJ also provided an explanation as to why he did not believe any persistence or pace-related restrictions were required (Tr. 27–28).

Next, Dr. Carlson explained that Plaintiff was "not well-suited for working directly with the public" in light of her diagnosis of social anxiety disorder (Tr. 133). The ALJ understood the crux of Dr. Carlson's opinion to be that Plaintiff's "public interaction should be restricted" (Tr. 28). The ALJ imposed this limitation in the RFC by saying that Plaintiff "should never interact with the public" (Tr. 24).

Finally, Dr. Carlson said that Plaintiff was "not well-suited for working . . . as part

of a collaborative team setting" but had "the ability to occasionally interact 1:1 with coworkers" and is "[a]ble to respond to supervision, ask questions, [and] maintain neat appearance" (Doc. 133). The ALJ understood the gist of Dr. Carlson's opinion to be that "there should be reduced interaction with others in a work setting" (Tr. 28). The ALJ imposed this limitation in the RFC when he said that Plaintiff "can tolerate occasional interactions with supervisors and co-workers, and she can respond appropriately during the interactions" (Tr. 28).

This is not a case where, like Plaintiff claims, the ALJ "played doctor" and gave his own lay interpretation of particular medical findings (*see* Doc. 22, p. 10). *But see Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (holding ALJ erred when he interpreted the results of an MRI himself instead of consulting a physician). Rather, this is a situation where an ALJ expressly agreed with a doctor's opinion and simply restated that opinion using different words. And there is nothing incorrect about what the ALJ did here. *See Langley v. O'Malley*, No. 22-3008, 2024 WL 3649021, at *3 (7th Cir. Aug. 5, 2024) (unpublished) ("An ALJ has discretion when incorporating a doctor's narrative opinion into an RFC assessment and need not replicate the precise language.") (citing *Recha v. Saul*, 843 Fed. Appx. 1, 4 (7th Cir. 2021) ("[A]n ALJ has some latitude with the exact wording of an RFC as long as it conveys in some way the restrictions necessary to address a claimant's limitations.")); *Leisgang v. Kijakazi*, 72 F.4th 216, 221 (7th Cir. 2023) ("Nothing require[s] the ALJ to stick to the exact words" of a medical source's assessment when formulating the claimant's RFC); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (in

crafting a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion . . . .").

While Plaintiff seems to think that Dr. Carlson's opinion was "vague or otherwise ambiguous," she does not explain the nature of the ambiguity or delineate the specific portions of Dr. Carlson's opinion that she thought required clarification (*see* Doc. 22, pp. 8–11). Nor does Plaintiff directly challenge the ALJ's interpretation of Dr. Carlson's "intent" (*see* Doc. 22, pp. 8–11). In other words, Plaintiff did not explain how the ALJ got it wrong or misconstrued the essence of Dr. Carlson's opinion, nor did Plaintiff provide any plausible alternative interpretation of Dr. Carlson's opinion (*see id.*). Similarly, Plaintiff did not argue that the limitations imposed by the ALJ were inconsistent with or failed to account for the limitations that Dr. Carlson identified (*see id.*). As the Court sees it, there is no obvious problem with the ALJ's interpretation of Dr. Carlson's "intent." Rather, the ALJ's interpretation seems to be accurate, fair, and complete. Likewise, the limitations imposed by the ALJ appear to the Court to fully and accurately reflect Dr. Carlson's opinion.

The Court also notes that the ALJ did not just rely on Dr. Carlson's findings to support his RFC assessment. The ALJ also discussed Plaintiff's most recent medical records and an Activities of Daily Living Questionnaire that she filled out and explained why he thought this evidence supported his finding that Plaintiff could perform mentally and socially undemanding work while sober. As such, the Court finds that the RFC assessment is supported by substantial evidence and a sufficient explanation.

### B. Appeals Council Order

Plaintiff's second argument is that ALJ Janney failed to comply with the Appeals Council's remand order to further develop the record regarding the severity and limiting effects of Plaintiff's mental health impairments (Doc. 22, p. 12; *see* Tr. 175).

The Appeals Council's Order stated: "Upon remand, the Administrative Law Judge will . . . [o]btain additional evidence concerning the claimant's mental impairments . . . . The additional evidence may include, if warranted and available, a consultative psychological examination and medical source opinions about what the claimant can still do despite the impairments." (Tr. 175).

Plaintiff argues that ALJ Janney violated the remand order by not obtaining a consultative medical examination or a medical expert's testimony (Doc. 22, p. 12). But as the Commissioner points out, the remand order did not *require* the ALJ to obtain either (Doc. 29, pp. 2, 11; Tr. 175). Rather, it required the ALJ to obtain additional evidence and suggested that additional evidence could come in the form of a consultative medical examination or a medical expert's testimony if the ALJ deemed it appropriate (Tr. 175). The Commissioner argues that ALJ Janney complied with the Appeals Council's remand order because the record before him contained over 100 pages of additional medical records that post-dated the first ALJ's decision (Doc. 29, p. 11; *see* Tr. 843-990). These additional records contained mental status examinations and other evidence discussing Plaintiff's mental health (Doc. 29, p. 11; *see* Tr. 843-990). And ALJ Janney considered those records at multiple points in his decision (Doc. 29, p. 11; *see* Tr. 20-21, 23-24, 26-27) (referencing administrative record exhibits 15f to 18f, which are the exhibits containing

the medical notes dated after the previous ALJ's decision). Given that the mental status exams were all generally normal (*e.g.,* intact memory; cooperative attitude; good insight and judgment; and/or normal appearance, mood, affect, speech, movement, and/or thoughts), the Commissioner argues that it was reasonable for the ALJ to consider a consultative psychological examination or an additional medical opinion to be unwarranted (Doc. 29, p. 12).

"[T]he completeness of an administrative record is generally committed to the ALJ's discretion." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). As the Seventh Circuit has acknowledged, no record is ever truly complete- "one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on." *Bertaud v. O'Malley*, 88 F.4th 1242, 1245 (7th Cir. 2023). For that reason, a reviewing court generally defers to the ALJ's reasoned judgment as to how much evidence must be gathered. *Bertaud*, 88 F.4th at 1245 (citing *Nelms v. Astrue,* 553 F.3d 1093, 1098 (7th Cir. 2009)); *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). A claimant must show that she was prejudiced by an omission from the record before a court will find that the Commissioner failed to develop the record fully and fairly. *Nelms*, 553 F.3d at 1098; *see also Flener*, 361 F.3d at 449 (ALJ's failure to recruit an expert to calculate standard deviations on represented claimant's test scores "was . . . not a significant, prejudicial omission of the type compelling reversal"). "To prove prejudice, the claimant must point to specific, relevant facts that the ALJ did not consider." *Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019) (citing *Nelms*, 553 F.3d at 1098). "Mere conjecture or speculation that additional evidence might have been

obtained in the case is insufficient to warrant a remand." *Nelms*, 553 F.3d at 1098 (citing *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)).

Here, Plaintiff did not dispute any of the Commissioner's arguments (*see* Doc. 30). She also makes no argument that a consultative psychological examination or an additional medical opinion was necessary in spite of the new medical records (*see* Doc. 30). Nor does she demonstrate how she was prejudiced by the ALJ's decision to not obtain a consultative psychological examination or an additional medical opinion (*see* Doc. 30). The Court thus concludes that ALJ Janney complied with the Appeals Council's remand order by considering over 100 pages of new medical records, and he was entitled to conclude that additional development of the issues was unnecessary.

## CONCLUSION

After careful review of the record as a whole, the Court is convinced the ALJ committed no errors of law and that his decision was well-reasoned and supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security dismissing Plaintiff's claim for Disability Insurance Benefits and denying her claim for Supplemental Security Income is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: September 20, 2024**

                                                s/ Mark A. Beatty
                                                **MARK A. BEATTY**
                                                **United States Magistrate Judge**